# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| STANLEY V. GRAFF, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 1:17-cv-06748 |
| | § | |
| LESLIE HINDMAN AUCTIONEERS, INC., BILTMORE LOAN AND JEWELRY-SCOTTSDALE LLC, THE OWINGS GALLERY, INC., NATHANIEL O. OWINGS, RAY HARVEY, ZAPLIN – LAMPERT GALLERY, INC., JIM PARKS, AND UNKNOWN DEFENDANT | § § § § § § § § | |
| Defendants. | § | |

## FIRST AMENDED COMPLAINT

Plaintiff Stanley V. Graff files this First Amended Complaint against Defendants Leslie Hindman Auctioneers, Inc., Biltmore Loan and Jewelry-Scottsdale LLC, The Owings Gallery, Inc., Nathaniel O. Owings, Ray Harvey, Zaplin – Lampert Gallery, Inc., Jim Parks, and Unknown Defendant, and in support thereof respectfully alleges the following:

## PARTIES

1. Plaintiff Stanley V. Graff is an individual residing in Dallas, Dallas County, Texas.

2. Defendant Leslie Hindman Auctioneers, Inc. is a corporation organized under the laws of Illinois with a principal place of business located at 1338 West Lake Street, Chicago, Illinois 60607. Leslie Hindman Auctioneers, Inc. was served with process through its registered agent, Leslie Hindman, 1338 West Lake Street, Chicago, Illinois 60607, on September 21, 2017 and will answer or otherwise plead on or before November 28, 2017.

3.     Defendant Biltmore Loan and Jewelry-Scottsdale LLC is a limited liability company organized under the laws of Arizona with a principal place of business located at 10830 N. Scottsdale Road, Scottsdale, Arizona 85254.  Biltmore Loan and Jewelry-Scottsdale LLC was served with process through its registered agent, BC Service Company, LLC, 702 E. Osborn, Suite 200, Phoenix, Arizona 85014, on September 13, 2017 and will answer or otherwise plead on or before November 28, 2017.

4.     Defendant The Owings Gallery, Inc. is a corporation organized under the laws of New Mexico with a principal place of business located at 120 East Marcy Street, Santa Fe, New Mexico 87501.  The Owings Gallery, Inc. was served with process through its registered agent, Nathaniel O. Owings, 120 East Marcy Street, Santa Fe, New Mexico 87501, on September 20, 2017 and will answer or otherwise plead on or before November 28, 2017.

5.     Defendant Nathaniel O. Owings resides in Santa Fe, New Mexico, and has a business address at 120 East Marcy Street, Santa Fe, New Mexico 87501.  Nathaniel O. Owings was served with process at this address on September 20, 2017 and will answer or otherwise plead on or before November 28, 2017.

6.     Defendant Ray Harvey is an individual residing at 5434 East Lincoln Drive #73, Paradise Valley, Arizona 85253.  Ray Harvey was served with process at this address on September 7, 2017 and will answer or otherwise plead on or before November 28, 2017.

7.     Defendant Zaplin – Lampert Gallery, Inc. is a corporation organized under the laws of New Mexico with a principal place of business located at 651 Canyon Road, Santa Fe, New Mexico 87501. Zaplin – Lampert Gallery, Inc. has agreed to waive service of process and to answer or otherwise plead on or before November 28, 2017.

8. Defendant Jim Parks is an individual residing in the State of California. Jim Parks has agreed to waive service of process and to answer or otherwise plead on or before November 28, 2017.

9. There is at least one person, in addition to those already made defendants, whose name is unknown, who does or may claim some right, title, or interest in the property made the subject of this lawsuit. However, the name of this person is unknown to Mr. Graff at this time. Accordingly, Mr. Graff makes this person a defendant in this action by the name and description of "Unknown Defendant."

## JURISDICTION AND VENUE

10. The Court has personal jurisdiction over Leslie Hindman Auctioneers, Inc. ("Hindman") because it is a resident of Chicago, Illinois.

11. The Court has personal jurisdiction over Defendant Biltmore Loan and Jewelry Scottsdale-LLC because it contracted with Hindman in Chicago, Illinois to sell three paintings that were stolen from Plaintiff Stanley V. Graff. Two of the paintings, the Berninghaus Painting and the Higgins Painting (as those terms are hereinafter defined), were sold at Hindman's auction which was held in Chicago, Illinois.

12. The Court has personal jurisdiction over Defendant The Owings Gallery, Inc. as this Defendant purchased the Higgins Painting (along with Defendants Nathaniel O. Owings, Ray Harvey, Zaplin – Lampert Gallery, Inc., and Jim Parks) at the Hindman auction held in Cook County, Illinois.

13. The Court has personal jurisdiction over Defendant Nathaniel O. Owings because he, along with others identified herein, purchased the Higgins Painting (as defined below) in Cook County, Illinois. Further, Mr. Owings acted in concert with Defendant Ray Harvey, Zaplin

– Lampert Gallery, Inc., and Jim Parks to sell stolen art knowing full well that title to the Higgins Painting never transferred to them.

14. The Court has personal jurisdiction over Defendant Ray Harvey because he, along with others identified herein, purchased the Higgins Painting (as defined below) in Cook County, Illinois. Further, Mr, Harvey acted in concert with Defendant Nathanial O. Owings, Zaplin – Lampert Gallery, Inc., and Jim Parks to sell stolen art knowing full well that title to the Higgins Painting never transferred to them.

15. The Court has personal jurisdiction over Zaplin – Lampert Gallery, Inc. because it, along with others identified herein, purchased the Higgins Painting (as defined below) in Cook County, Illinois. Further, Zaplin – Lampert Gallery, Inc. acted in concert with Defendant Nathanial O. Owings, Ray Harvey, and Jim Parks to sell stolen art knowing full well that title to the Higgins Painting never transferred to them.

16. The Court has personal jurisdiction over Jim Parks because he, along with others identified herein, purchased the Higgins Painting (as defined below) in Cook County, Illinois. Further, Jim Parks acted in concert with Defendant Nathanial O. Owings, Ray Harvey, and Zaplin – Lampert Gallery, Inc. to sell stolen art knowing full well that title to the Higgins Painting never transferred to them.

17. Upon Defendant Ray Harvey's removal, venue is proper in in this Court because this Court is in the district and division embracing the Circuit Court for Cook County, Illinois, where this action was originally filed. *See* 28 U.S.C. 1441(a).

## FACTUAL BACKGROUND

18. This case is about numerous persons knowingly dealing in three pieces of Western American art which were wrongfully taken from the Dallas home of Stanley V. Graff ("Mr. Graff").

19. On May 18, 2002, Mr. Graff purchased *Taos Indians and the Sangre de Cristos*, an oil painting by artist Oscar Edmund Berninghaus (the "Berninghaus Painting") from Altermann Galleries in Dallas, Texas. Since the date of purchase, Mr. Graff has been the sole owner of the Berninghaus Painting and it has always been his separate property.

20. On May 13, 2006, Mr. Graff purchased *Snow Capped Mountains* (also referred to as *Meadow with Cattle*), an oil painting by artist William Victor Higgins (the "Higgins Painting") from Texas Art Gallery, Inc. in Dallas, Texas. Since the date of purchase, Mr. Graff has been the sole owner of the Higgins Painting and it has always been his separate property.

21. On July 29, 2009, Mr. Graff purchased *By the Light of the Moon*, an oil painting by artist Frank B. Hoffman (the "Hoffman Painting") from the Coeur d' Alene Art Auction in Hayden, Indiana. Since the date of purchase, Mr. Graff has been the sole owner of the Hoffman Painting and it has always been his separate property.

22. Mr. Graff and Deborah Graff were married on or about September 28, 2003. In January of 2013, Deborah Graff filed for divorce in Dallas, Texas. As part of the divorce proceedings, a standing order was issued prohibiting Deborah Graff from selling assets from the marital home located in Dallas, Texas without the permission of Mr. Graff and the divorce court.

23. While the divorce proceedings were ongoing, and without the permission or knowledge of Mr. Graff or the divorce court, Deborah Graff took the Berninghaus Painting, the Higgins Painting, and the Hoffman Painting from Mr. Graff's home in Dallas. Shortly thereafter, Deborah Graff pawned each painting to Defendant Biltmore Loan and Jewelry-Scottsdale LLC ("Biltmore").

24. Upon information and belief, Deborah Graff failed to pay back the loan she received from Biltmore which was secured by the paintings. Upon information and belief, when

Deborah Graff defaulted on the loan, Biltmore entered into a contract with Defendant Hindman and then sent the Berninghaus, Higgins, and Hoffman Paintings to Hindman, located in Chicago, Illinois, to be sold at auction.

25.  Upon information and belief, Hindman received the three paintings, put the paintings up for sale, and, on or about September 25, 2015, Hindman placed the Berninghaus, Higgins, and Hoffman Paintings in an auction.

26.  Upon information and belief, Biltmore sold the Berninghaus Painting at the Hindman auction to an individual residing in Dallas, Texas (this individual will be identified anonymously herein as "the Berninghaus Purchaser").  Upon determining the identity of the Berninghaus Purchaser, Mr. Graff contacted him.  After speaking with Mr. Graff and learning of the lack of title to the Berninghaus Painting, the Berninghaus Purchaser represented that he sympathized with Mr. Graff, and that he would remain in possession of the Berninghaus Painting on behalf of Mr. Graff until he is reimbursed by the nefarious actors who knowingly sold the Berninghaus Painting to him when they did not have good title to such Painting.  Recently, Mr. Graff regained possession of the Berninghaus Painting for the payment of $100,000.

27.  Also at this same Hindman auction, upon information and belief, Biltmore sold the Higgins Painting to an investor group comprised of Defendants The Owings Gallery, Inc. ("Owings Gallery"), Nathaniel O. Owings ("Mr. Owings"), Ray Harvey ("Mr. Harvey"), Zaplin – Lampert Gallery, Inc. ("Zaplin – Lampert") and Jim Parks ("Mr. Parks") (collectively, the "Investor Group").  Upon information and belief, Mr. Owings organized the Investor Group for the purpose of purchasing the Higgins Painting at the Hindman auction.  Upon information and belief, Owings Gallery and Mr. Owings acted on behalf of the entire Investor Group in the purchase of the Higgins Painting from the Hindman auction.

28.     Shortly after the auction, in November 2015, Mr. Graff learned for the first time that the Higgins Painting had been wrongfully taken and that the Investor Group had possession of it.  More precisely, after learning on November 13, 2015 that the Berninghaus Painting had been sold to the Berninghaus Purchaser, Mr. Graff found through a search of Hindman's sale records that the Higgins Painting and the Hoffman Painting had additionally been placed for sale by Hindman at the auction.  In turn, Mr. Graff called Defendant Ray Harvey to seek his advice and provide help in locating a lawyer who could help Mr. Graff get back his three paintings.  Unbeknownst to Mr. Graff at the time of his call to Mr. Harvey, Mr. Harvey was one of the participants in the Investor Group that Mr. Owings put together to purchase the Higgins Painting.  Mr. Harvey, upon information and belief, realized this on the call with Mr. Graff and said he would have to call Mr. Graff back.  The next day, Mr. Harvey called Mr. Graff back and told him that he could not help Mr. Graff and that he had spoken to Mr. Owings and that Mr. Owings said that the Investor Group had title to the Higgins Painting and it would be sold.

29.     When Mr. Graff learned of these facts, Mr. Graff contacted Mr. Owings to inform him that the Higgins Painting had been wrongfully taken and that Mr. Graff wanted it returned to him as he was its rightful and sole owner of the Higgins Painting.  Mr. Owings, now fully aware that he was in possession of property wrongfully taken from Mr. Graff, ensured Mr. Graff that (a) he was still in possession of the Higgins Painting, (b) he would not sell or dispose of the Higgins Painting, and (c) he would reach out to Hindman about the Higgins Painting.

30.     Despite Mr. Owings' promises to Mr. Graff, and with knowledge of the lack of good title to the Higgins Painting, Mr. Owings (on behalf of himself and the other members of the Investor Group) completed a sale of the Higgins Painting to an unknown person or entity.

31. Upon information and belief, Mr. Owings and the Investor Group did, in fact, sell the Higgins Painting. Upon finding this out, Mr. Graff called Mr. Owings to request the identity of the purchaser of the Higgins Painting. Adding insult to injury, Mr. Owings declined to provide Mr. Graff with this information. The Higgins Painting is now in the possession of an unknown person or entity identified herein as Unknown Defendant.[1]

32. Through communications amongst counsel, Biltmore has informed Mr. Graff that Biltmore was unsuccessful in selling the Hoffman Painting at the September 25, 2015 auction organized by Hindman, and Biltmore is currently in the possession of the Hoffman Painting.

33. Mr. Graff has contacted Biltmore and Mr. Owings and demanded the return of his paintings. But, Biltmore and Mr. Owings have refused to return the paintings to Mr. Graff despite the fact that Mr. Graff is the rightful owner of the three paintings.

---

[1] To date, the Investor Group has refused to identify this purchaser despite being requested to provide this information on multiple occasions.

## CLAIMS FOR RELIEF

### COUNT I – CONVERSION OF THE BERNINGHAUS PAINTING
### (DEFENDANTS BILTMORE AND HINDMAN)

34. Mr. Graff alleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

35. At all times since Mr. Graff purchased the Berninghaus Painting on May 18, 2002, Mr. Graff has been the sole legal owner of the Berninghaus Painting and has, at all times, had the absolute and unconditional right to its immediate possession.

36. As set forth in the preceding paragraphs, Biltmore and Hindman wrongfully possessed the Berninghaus painting, then wrongfully exercised dominion and control over the Berninghaus Painting by selling it at auction on September 25, 2015.

37. Mr. Graff did not learn of Biltmore and Hindman's wrongful possession of the Berninghaus painting until after the Berninghaus painting was no longer in either of their possessions. As such, any demand made to Biltmore or Hindman for return of the Berninghaus painting would have been futile. However, Mr. Graff did contact Biltmore for the return of the Berninghaus Painting, but the painting was not returned to Mr. Graff.

38. As a result of Biltmore's and Hindman's wrongful conversion of the Berninghaus Painting, Mr. Graff has suffered monetary damages which he hereby seeks to recover.

### COUNT II – UNJUST ENRICHMENT RELATING TO THE BERNINGHAUS
### PAINTING (DEFENDANT BILTMORE)

39. Mr. Graff alleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

40. Upon information and belief, Biltmore loaned Deborah Graff approximately $40,000 secured by an interest in, among other things, the Berninghaus Painting.

41. Upon information and belief, after Deborah Graff's default on the loan secured by the Berninghaus Painting, Biltmore sold the Berninghaus Painting on September 25, 2015 at the auction organized by Hindman for $87,500.

42. Consequently, Biltmore has unjustly received a benefit to the detriment of Mr. Graff, and Biltmore's retention of such benefit violates the fundamental principles of justice, equity, and good conscience.

43. Mr. Graff thus seeks equitable relief from the Court to remedy the unjust benefit received by Biltmore.

### COUNT III – REPLEVIN FOR THE RECOVERY OF THE HIGGINS PAINTING
### (735 ILCS 5/19-101) (UNKNOWN DEFENDANT)

44. Mr. Graff alleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

45. Mr. Graff is the sole legal owner of the Higgins Painting.

46. Mr. Graff has an immediate and superior right to possession of the Higgins Painting.

47. Upon information and belief, Unknown Defendant purchased the Higgins Painting from the Investor Group.

48. Upon information and belief, Unknown Defendant has wrongfully detained the Higgins Painting and continues to exercise unauthorized dominion and control over it, to the exclusion of the rights of Mr. Graff. The Higgins Painting has not been taken for any tax, assessment, or fine or seized under any execution or attachment.

49. Because Mr. Graff cannot ascertain the identity of Unknown Defendant without obtaining information from Mr. Owings, Mr. Graff has been unable to demand the return of the Higgins Painting to Mr. Graff prior to the filing of this Complaint.

50. Mr. Graff, as owner of the Higgins Painting, is entitled to its return.

51. Because of Unknown Defendant's wrongful possession of the Higgins Painting to the exclusion of Mr. Graff's rights, Mr. Graff has suffered monetary damages which he hereby seeks to recover, along with possession of the Higgins Painting.

### COUNT IV – DETINUE FOR RECOVERY OF THE HIGGINS PAINTING
### (UNKNOWN DEFENDANT)

52. Mr. Graff alleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

53. Mr. Graff has an immediate and superior right to possession of the Higgins Painting.

54. The Investor Group purchased the Higgins Painting at the Hindman auction. At a later date, the Investor Group sold the Higgins Painting to Unknown Defendant. Mr. Graff demanded the return of the Higgins Painting from the Investor Group prior to their completion of the sale to Unknown Defendant, but his request was denied. Moreover, because Mr. Graff does not know the identity of Unknown Defendant (because that information is being withheld from Mr. Graff by the Investor Group), Mr. Graff cannot make demand upon Unknown Defendant.

55. Unknown Defendant continues to exercise unauthorized dominion and control over the Higgins Painting, to the exclusion of the rights of Mr. Graff.

56. Mr. Graff, as sole owner of the Higgins Painting, is entitled to its return.

57. Because of the wrongful possession of the Higgins Painting to the exclusion of Mr. Graff's rights, Mr. Graff has suffered monetary damages which he hereby seeks to recover, along with possession of the Higgins Painting.

**COUNT V – CONVERSION OF THE HIGGINS PAINTING
(DEFENDANTS BILTMORE, HINDMAN, MR. OWINGS, OWINGS
GALLERY, MR. HARVEY, ZAPLIN – LAMPERT,
MR. PARKS, AND UNKNOWN DEFENDANT)**

58. Mr. Graff alleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

59. At all times since Mr. Graff purchased the Higgins Painting on May 13, 2006, Mr. Graff has been the sole legal owner of the Higgins Painting and has, at all times, had the right to its immediate possession.

60. As set forth in the preceding paragraphs, Biltmore and Hindman wrongfully possessed the Higgins painting, then wrongfully exercised dominion and control over the Higgins Painting by selling it at auction on September 25, 2015 to the Investor Group.

61. Upon information and belief, shortly after the auction, the Higgins Painting was delivered to the Investor Group at the Owings Gallery. Accordingly, the Investor Group and the Owings Gallery wrongfully possessed the Higgins Painting during that period of time. Moreover, the Investor Group wrongfully exercised dominion and control over the Higgins Painting by selling it to Unknown Defendant.

62. Upon information and belief, the Investor Group delivered the Higgins Painting to Unknown Defendant, and Unknown Defendant presently remains in possession of the Higgins Painting. As a result, Unknown Defendant is currently in wrongful possession of the Higgins Painting.

63. Mr. Graff did not learn of the Investor Group's wrongful possession of the Higgins painting until after the Higgins painting was no longer in the Investor Group's possession. As such, any demand made to Mr. Owings, Mr. Harvey, Zaplin – Lampert, or Mr. Parks for return of the Higgins painting would have been futile. But, Mr. Graff did demand the

return of the Higgins Painting prior to the Investor Group completing the sale of the painting to Unknown Defendant; however, Mr. Owings (on behalf of the Investor Group) denied Mr. Graff's request.

64. As a result of the continued wrongful conversion of the Higgins Painting by Biltmore, Hindman, Mr. Owings, Owings Gallery, Mr. Harvey, Zaplin – Lampert, Mr. Parks, and Unknown Defendant, Mr. Graff has suffered monetary damages which he hereby seeks to recover.

### COUNT VI – CIVIL CONSPIRACY TO CONVERT THE HIGGINS PAINTING
### (DEFENDANTS MR. OWINGS, OWINGS GALLERY,
### MR. HARVEY, ZAPLIN – LAMPERT, AND MR. PARKS)

65. Mr. Graff alleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

66. At all times since Mr. Graff purchased the Higgins Painting, Mr. Graff has been the legal owner of the Higgins Painting and has, at all times, had the right to immediate possession of the Higgins Painting.

67. The Higgins Painting was placed for sale via auction on or about September 25, 2015 by Defendant Hindman.

68. Upon information and belief, the members of the Investor Group agreed to form the Investor Group for the sole purpose of purchasing and reselling the stolen Higgins Painting. The Investor Group had full knowledge that Mr. Graff was the legal owner of the Higgins Painting prior to the Investor Group selling the painting to Unknown Defendant. This agreement was an agreement to convert the Higgins Painting by wrongfully possessing, and subsequently selling, the Higgins painting.

69. The Investor Group did, in fact, purchase the Higgins Painting from the Hindman auction.

70. On November 23, 2015, Mr. Graff had a telephone conversation with Mr. Owings during which Mr. Owings informed Mr. Graff that the Investor Group believed that they were innocent purchasers of the Higgins Painting and were planning to resell the painting, despite Mr. Graff's claim of ownership over the painting.

71. The Investor Group subsequently resold the Higgins Painting to Unknown Defendant.

72. The members of the Investor Group entered into the agreement to convert the Higgins Painting and, subsequently executed that agreement and committed the tort of conversion (as set forth in detail in Count VI, *supra*).

73. As a result of the Investor Group's wrongful conspiracy, Mr. Graff has suffered monetary damages which he hereby seeks to recover.

**COUNT VII – PROMISSORY ESTOPPEL RELATING TO THE HIGGINS PAINTING (DEFENDANT MR. OWINGS)**

74. Mr. Graff alleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

75. On or about November 16, 2015, Mr. Owings made a promise to Mr. Graff that Mr. Owings would not transfer or sell the Higgins Painting.

76. Mr. Owings could reasonably foresee that Mr. Graff would rely on Mr. Owings' promise, and Mr. Graff reasonably and justifiably relied upon the promise to his substantial detriment.

77. Mr. Graff has suffered and will continue to suffer harm as a result of Mr. Owings' wrongful actions.

78. Injustice can be avoided only through enforcement of the promise made to Mr. Graff by Mr. Owings.

**COUNT VIII – PROMISSORY FRAUD RELATING TO THE HIGGINS PAINTING
(DEFENDANTS MR. OWINGS, OWINGS GALLERY,
MR. HARVEY, ZAPLIN – LAMPERT, AND MR. PARKS)**

79. On or about November 16, 2015, Mr. Owings (on behalf of the Investor Group) made misrepresentations of material facts to Mr. Graff as part of a scheme to defraud Mr. Graff and profit from the sale of the Higgins Painting. Specifically, during a series of two telephone conversations taking place on November 16, 2015, Mr. Owings represented that he (on behalf of the Investor Group) was in possession of the Higgins Painting and that he would not transfer or sell the Higgins Painting.

80. At the time Mr. Owings made the representations to Mr. Graff, Mr. Owings knew those representations to be false. Indeed, upon information and belief, Mr. Owings had already arranged for the sale of the Higgins Painting at the time he made the representations to Mr. Graff. In addition, Mr. Owings had formed the Investor Group specifically for the purpose of purchasing and selling the Higgins Painting and obtaining profits therefrom.

81. Mr. Owings (on behalf of the Investor Group) made the representations to Mr. Graff with the intent that Mr. Graff act, or refrain from acting, in reliance on the representations. Specifically, Mr. Owings' actions portray an intent on the part of Mr. Owings to induce Mr. Graff to refrain from taking action with respect to the Higgins Painting so to allow enough time for the Investor Group to wrongfully convey the Higgins Painting to Unknown Defendant.

82. In reliance on Mr. Owings' misrepresentations, Mr. Graff reasonably and justifiably refrained from taking action to immediately recover the Higgins Painting.

83. As a result of Mr. Graff's reliance on Mr. Owings' knowing misrepresentations, Mr. Graff has suffered injury, including monetary damages.

### COUNT IX – UNJUST ENRICHMENT RELATING TO THE HIGGINS PAINTING (DEFENDANTS BILTMORE, MR. OWINGS, OWINGS GALLERY, MR. HARVEY, ZAPLIN – LAMPERT, AND MR. PARKS)

84. Mr. Graff alleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

85. Upon information and belief, Biltmore loaned Deborah Graff approximately $40,000 secured by an interest in, among other things, the Higgins Painting.

86. Upon information and belief, after Deborah Graff's default on the loan secured by the Higgins Painting, Biltmore sold the Higgins Painting on September 25, 2015 at the auction organized by Hindman.

87. Upon information and belief, the Investor Group purchased the Higgins Painting from Biltmore at the Hindman auction for $105,000.

88. Upon information and belief, despite Mr. Owings' promise (on behalf of the Investor Group) to Mr. Graff that he would not sell the Higgins Painting, and with knowledge of its stolen nature, the Investor Group sold the Higgins Painting to Unknown Defendant for $185,000.

89. Consequently, Biltmore (in the first sale), and the Investor Group (in the second sale) have unjustly received a benefit to the detriment of Mr. Graff, and their retention of such benefit violates the fundamental principles of justice, equity, and good conscience.

90. Mr. Graff thus seeks equitable relief from the Court to remedy the unjust benefit received by Biltmore, Mr. Owings, Mr. Harvey, Zaplin – Lampert, and Mr. Parks.

### COUNT X – REPLEVIN FOR THE RECOVERY OF THE HOFFMAN PAINTING (735 ILCS 5/19-101) (DEFENDANT BILTMORE)

91. Mr. Graff alleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

92. Mr. Graff is the legal owner of the Hoffman Painting.

93. Mr. Graff has an immediate and superior right to possession of the Hoffman Painting.

94. Upon information and belief, the Hoffman Painting was not sold at the auction organized by Hindman on September 25, 2015. Upon information and belief, the Hoffman Painting was thereafter returned by Hindman to Biltmore.

95. Upon information and belief, Biltmore continues to exercise unauthorized dominion and control over the Hoffman Painting, to the exclusion of the rights of Mr. Graff. The Hoffman Painting has not been taken for any tax, assessment, or fine or seized under any execution or attachment.

96. Mr. Graff made demand to Biltmore for the return of the Hoffman Painting, but Biltmore refused and continues to wrongfully detain the Hoffman Painting.

97. Mr. Graff, as owner of the Hoffman Painting, is entitled its return.

98. Because of Biltmore's wrongful possession of the Hoffman Painting to the exclusion of Mr. Graff's rights, Mr. Graff has suffered damages which he hereby seeks to recover.

### COUNT XI – DETINUE FOR THE RECOVERY OF THE HOFFMAN PAINTING (DEFENDANT BILTMORE)

99. Mr. Graff alleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

100. Mr. Graff is the legal owner of the Hoffman Painting.

101. Mr. Graff has an immediate and superior right to possession of the Hoffman Painting.

102. Upon information and belief, the Hoffman Painting was not sold at the auction organized by Hindman on September 25, 2015. Upon information and belief, the Hoffman Painting was thereafter returned by Hindman to Biltmore.

103. Upon information and belief, Biltmore continues to exercise unauthorized dominion and control over the Hoffman Painting, to the exclusion of the rights of Mr. Graff. The Hoffman Painting has not been taken for any tax, assessment, or fine or seized under any execution or attachment.

104. Mr. Graff made demand to Biltmore for the return of the Hoffman Painting, but Biltmore refused and continues to wrongfully detain the Hoffman Painting.

105. Mr. Graff, as owner of the Hoffman Painting, is entitled its return.

106. Because of Biltmore's wrongful possession of the Hoffman Painting to the exclusion of Mr. Graff's rights, Mr. Graff has suffered damages which he hereby seeks to recover, along with the return of the Hoffman Painting.

### COUNT XII – CONVERSION OF THE HOFFMAN PAINTING
### (DEFENDANTS BILTMORE AND HINDMAN)

107. Mr. Graff alleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

108. At all times since Mr. Graff purchased the Hoffman Painting on July 29, 2009, Mr. Graff has been a legal owner of the Hoffman Painting and has, at all times, had the right to immediate possession of the Hoffman Painting.

109. As set forth in the preceding paragraphs, Biltmore and Hindman wrongfully possessed the Hoffman painting, then wrongfully exercised dominion and control over the Hoffman Painting by attempting to sell it at auction on September 25, 2015.

110. Mr. Graff made demand to Biltmore for return of the Hoffman painting, but Biltmore refused.

111. As a result of Biltmore and Hindman's wrongful conversion of the Hoffman Painting, Mr. Graff has suffered monetary damages which he hereby seeks to recover.

## ATTORNEY'S FEES

112. Mr. Graff seeks from all Defendants his reasonable and necessary attorneys' fees and expenses as provided for under applicable Illinois law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Mr. Stanley V. Graff respectfully requests that all Defendants be cited to appear in this action. Further, Mr. Graff requests the relief he is entitled to, in law and in equity, including but not limited to:

    a. Entry of judgment against Defendants on all Claims for Relief;

    b. Return of the Berninghaus, Higgins, and Hoffman Paintings to Mr. Graff;

    c. All actual, consequential, and punitive damages as determined after trial on the merits;

    d. Costs of suit and reasonable and necessary attorneys' fees incurred herein;

    e. Pre-judgment and post-judgment interest at the maximum rate provided by law; and

    f. All other relief to which Mr. Graff is justly entitled.

Respectfully submitted,

**FALKENBERG IVES LLP**

Kirstin B. Ives – ARDC 6289952
30 N. LaSalle Street, Suite 4020
Chicago, Illinois 60602
(312) 566-4800

*ATTORNEYS FOR PLAINTIFF STANLEY V. GRAFF*